UNITED MERCANTILE AGENCIES, Appellant, v. JAMES (JANES) W. JACKSON and THURSA JACKSON.—No. 38472.—173 S. W. (2d) 881.

Division One, September 7, 1943.

*Haymes & Dickey* and *Haymes & Haymes* for appellant.

*J. P. Smith, John C. Pope* and *Seth V. Conrad* for respondents.

VAN OSDOL, C.—This cause, an action on a promissory note, has been certified and transferred to this court under the provisions of Section 6, Amendment of 1884, Article VI of the Constitution of Missouri. (See United Mercantile Agencies v. Jackson (Mo. App.), 166 S. W. (2d) 807.) The judgment was for defendants, and plaintiff has appealed.

The petition alleges that defendants executed and delivered their promissory note, dated November 13, 1933, payable to the Citizens Bank of Marshfield, or order, in the principal sum of $2000, due six months after date, bearing interest compounded annually at the rate of 8% per annum, payable semiannually, with all costs of collection, including a 10% attorney's fee, if not paid at maturity. It is further alleged that the payee "endorsed the same in writing across the back thereof and delivered and transferred the same to the plaintiff for value, whereby plaintiff became and is the owner and holder . . ."

The answer contains a general denial and pleads affirmatively that plaintiff, a corporation organized for profit under the laws of the State of Kentucky, cannot maintain the action for the reason that it has violated the provisions of Section 5077, R. S. 1939, Mo. R. S. A. sec. 5077, and has not complied with the provisions of Section 5074, R. S. 1939, Mo. R. S. A., sec. 5074. The answer further alleges that plaintiff purchased the note, together with the notes of many other persons, from a domestic banking corporation; and that, by so purchasing and discounting the notes, plaintiff engaged in the banking business in violation of certain sections of the statutes of the State of Missouri relating to banks and banking.

The reply admits that the plaintiff is a corporation organized under the laws of the State of Kentucky, denies that plaintiff engaged in business in Missouri, and denies the allegations of the answer other than the tacit admission therein of defendant's execution of the note.

It is stipulated by the parties that the note was executed by defendants; that plaintiff is a corporation organized for pecuniary profit under the law of the State of Kentucky, has never had any office or place for the transacting of its business in Missouri and has not been licensed to do or transact business as a foreign corporation in this state; that on October 29, 1940, plaintiff bought the note, and many other notes and some judgments, "all included in one bid," at public auction from the Commissioner of Finance for the State of Missouri who was at the time of the sale in charge of the business and affairs of the Citizens Bank of Marshfield then in process of liquidation; that the total face value of the assets so purchased was $140,000, for which plaintiff bid and paid $2207; that after the purchase plaintiff sent two representatives to Webster County for the purpose of collecting the notes and judgments; that the representatives took lodging at a hotel in Marshfield for several weeks, "contacted a large

number of persons owing," including defendants, collecting or compromising some of the obligations; that thereafter plaintiff placed many of the remaining notes and judgments in the hands of attorneys authorized to collect, compromise or commence action—some of the obligations have been compromised, and several actions have been brought some of which are now pending.

Among the specific purposes for the incorporation of plaintiff, as provided by an amendment to its Articles of Incorporation, are ". . . buying, selling, leasing, managing, possessing, or otherwise dealing in real estate, stocks, bonds, or property of any kind; and to do all things incident and necessary to any or all of the foregoing enumerated activities."

.Defendants do not direct our attention to the basis of their contention that, under the facts stipulated, the plaintiff has engaged in the banking business in this state. The sole question for consideration herein is—did plaintiff "do" or "transact" business in the State of Missouri within the meaning of the provisions of Sections 5074 and 5077, R. S. 1939, Mo. R. S. A., secs. 5074 and 5077.

Section 5074 provides that "Every company incorporated for the purpose of gain under the laws of any other state . . . now or hereafter doing business within this state, shall file in the office of the secretary of state a copy of its charter or articles of association . . . and the principal officer or agent in Missouri shall make and forward to the secretary of state . . . [883] a sworn statement . . . which statement shall set out the location of its principal office or place in this state for the transaction of its business. . . . Upon compliance with these provisions by the corporation, the secretary of state shall give a certificate that said corporation has duly complied with the law . . . and every foreign corporation which shall fail or refuse to comply with the provisions as herein provided within the time therein specified shall not be permitted to maintain any suit or action . . . in any of the courts of this state . . ."

Section 5077 provides that ". . . no foreign corporation, . . . which shall fail to comply with said sections (including Section 5074, supra), can maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand, whether arising out of the contract or tort . . ."

The determination of whether a foreign corporation is "doing" or "transacting" business in a state within the meaning of a particular statute is primarily dependent upon the facts and circumstances of the particular case, considered in the light of the purposes and the language of the statute. 23 Am. Jur., Foreign Corporations, sec. 360, pp. 333-335; 20 C. J. S., Corporations, sec. 1828, pp. 45-46.

Section 5074, supra, prescribes the conditions prerequisite to the right of foreign corporations to do business in this state. The meaning of the terms "do" or "transact" business under the language of the section is different from the unlimited meaning of such terms. Hogan

v. St. Louis, 176 Mo. 149, 75 S. W. 604; Wulfing v. Armstrong Cork Co., 250 Mo. 723, 157 S. W. 615; Frazier v. Rockport, 199 Mo. App. 80, 202 S. W. 266. Only such transactions are void which have been entered into while the (unlicensed) foreign corporation is doing or transacting business for which it is created and organized. Those acts are not void which are done while the corporation is merely doing or transacting such business as it may have authority to do. Meir v. Crossley, 305 Mo. 206, 264 S. W. 882 (sales of capital stock, holding board meetings, making contracts, etc.); Meddis v. Kenney, 176 Mo. 200, 75 S. W. 633 (engaging in litigation); Missouri Coal and Mining Co. v. Ladd, 160 Mo. 435, 61 S. W. 191 (lease of its land to others after the foreign corporation had ceased to transact business for which it was incorporated); Clark v. Kansas Petroleum Co., 144 Mo. App. 182, 129 S. W. 466 (sale of capital stock); First National Bank v. Leeper, 121 Mo. App. 688, 97 S. W. 636 (sale of capital stock); Hogan v. St. Louis, supra (contract preliminary to doing business in the state); Wulfing v. Armstrong Cork Co., supra (lease of store and factory building, preliminary to doing business in the state); Frazier v. Rockport, supra (contract preliminary to doing business in the state). The burden is upon the party alleging the violation of the statute to show that an act or transaction is a doing or a transacting of business in this state within the meaning of the statute. Parker v. Wear (Mo. Sup.), 230 S. W. 75; United Shoe Machinery Co. v. Ramlose, 210 Mo. 631, 109 S. W. 567.

In the instant case the purchase of the notes and judgments from the Commissioner of Finance was a transaction of business clearly within the ordinary business for which the plaintiff was created and organized. The very act of purchase was a "buying" within the provisions of its amended articles of incorporation.

It is contended by plaintiff, appellant, that the purchase of the notes and judgments was an isolated transaction and so did not constitute a doing or a transaction of business within the meaning of the statutes. It is quite apparent that the purchase of the notes and judgments was a single or isolated transaction. The plaintiff purchased the defendants' note and the obligations of many others; but it is stipulated by the parties that in fact the plaintiff bought "the note herein sued upon, along with many others, together with some judgments," all included in one bid.

It has been held that a single or isolated act or transaction does not constitute the doing of business within the meaning of the statute when the act or transaction is not, or is not shown to be, a part of the business for which the corporation was organized. State v. Shell Pipe Line Corporation, 345 Mo. 1222, 139 S. W. 2d 510; Shields v. Chapman (Mo. App.), 240 S. W. 505. See also Meir v. Crossley, supra.

It has been stated by the courts of this state that a single, isolated act or transaction, although a part of the very purpose for which

the corporation was organized, does not constitute the doing or the transacting of business within the meaning of [884] the statute. Shields v. Chapman, supra; State ex rel. City of St. Louis v. Public Service Commission, 335 Mo. 448, 73 S. W. 2d 393. See also Mergenthaler Linotype Co. v. Hays, 182 Mo. App. 113, 168 S. W. 239, and another appeal of the same case (Mo. App.), 181 S. W. 1183, which latter judgment was quashed on certiorari in State ex rel. Hays v. Robertson, 271 Mo. 475, 196 S. W. 1132, being in conflict with the decision of the case of United Shoe Machinery Co. v. Ramlose, supra.

It has been held that a single or isolated transaction within the ordinary purposes for which the foreign corporation is organized is void, in the case of Tri-state Amusement Co. v. Forest Park Highlands Amusement Co., 192 Mo. 404, 90 S. W. 1020. In that case plaintiff's petition alleged a contract under which plaintiff, an unlicensed foreign corporation, had undertaken for a consideration, a share of the payments of admission, to furnish theatrical performances for a period of over *four years* at defendant's theatre in the city of St. Louis. It was alleged that after plaintiff had provided entertainment for about four months, defendant refused to allow plaintiff to further carry out the contract. Plaintiff prayed for a judgment for such damages as could be ascertained by an accounting. Presumably the plaintiff was organized for the very purpose of providing theatrical entertainment. This court affirmed the trial court's action in sustaining a demurrer to the petition.

Defendants, respondents, urge the case of State v. Shell Pipe Line Corporation, supra, as authority for their position that an isolated transaction of business by an unlicensed foreign corporation is valid only if the transaction is "without" the ordinary business for which the corporation was organized. In that case, 345 Mo. at page 1247, this court comments on the case of Shields v. Chapman, supra, as follows:

"In the Shields case the court also points out that according to the weight of authority isolated transactions, commercial or otherwise, between a foreign corporation domiciled in one State and citizens of another State are not a doing or carrying on of business by the foreign corporation within the latter State, and this we believe to be the generally accepted doctrine where the act in question was not part of the business for which the corporation was organized."

This court in the Shell Pipe Line case, however, was considering a transaction which it held was not a part of the business for which the corporation was organized; the quoted language of the opinion is not construed to imply that all isolated transactions which are a part of the business for which the corporation is organized constitute a doing or a transaction of business within the meaning of the statute.

The apparent inconsistency of the statements of the two cases, Shields v. Chapman, supra, and State ex rel. City of St. Louis v. Public Service Commission, supra (and of the statement in the case

of Mergenthaler Linotype Co. v. Hays, 182 Mo. App. 113), with rulings of this court·in State ex rel. Hays v. Robertson, supra, United Shoe Machinery Co. v. Ramlose, supra, and .Tri-state Amusement Co. v. Forest Park Highlands Amusement Co.,. supra, may be explained if we are mindful that it is not the contract, or the act, or the transaction *as such* which is forbidden (if compliance has not been made with the statute), but it is those contracts, acts, or transactions. which constitute a doing or a transaction of business *within the meaning of the statute* which are inhibited. As was stated by this court in Wulfing v. Armstrong Cork Co., supra, 250 Mo. at pages 730-731, ". . . it is not the making of a contract for performance within the State which is intended to be forbidden without regard to its nature or object, . . . the inhibition is directed against the making of all contracts and the doing of all acts which constitute the transaction of business *within the meaning of its* (the statute's) *terms.*" (Our italics.)

The "buying" of the notes and judgments in the instant case is, therefore, valid or void not depending solely upon whether it is a mere single or isolated transaction within the purposes of its incorporation— but upon whether or not the plaintiff by the purchasing of the notes and judgments (an isolated transaction within the purposes of its incorporation) was a doing or a transacting of business *within the meaning of Sections 5074 and 5077, supra.*

Referring to the case of State v. Shell Pipe Line Corporation, supra, we note that the case involves the question of whether the defendant was subject to liability for an annual corporation franchise tax (see Section 5113, R. S. 1939, Mo. R. S. A., sec. 5113). [885] However, the court quotes with approval the language of Ruling Case Law applicable to statutes prescribing conditions prerequisite (as Section 5074, supra) to the right of foreign corporations to do business within a state; "It seems to be the consensus of opinion that a corporation, to come within the purview of most statutes prescribing conditions on the right of foreign corporations to do business within the state, must transact therein some substantial part of its ordinary business, which must be continuous in the sense that it is distinguished from merely casual or occasional transactions . . ." 12 R. C. L., Foreign Corporations, sec. 48, p. 69.

The isolated transaction, the purchase of the notes and judgments by the plaintiff in the case at bar, a part of plaintiff's ordinary business, was therefore a doing or a transacting of business within the meaning of the statute only if the transaction was *continuous* in the sense that it was not merely casual or occasional:

It is stated by other authority that a single or isolated transaction of a foreign corporation is a doing or a transaction of business within the meaning of the statute where "the single or isolated transaction forms a part of the regular business of the corporation, and the action of the corporation in engaging therein *indicates a purpose to continue* to engage within the state in the transaction of a part or all

of its ordinary business, *or* where the transaction is of a nature which *necessitates a continuity of activity* by the corporation within the state for a considerable period of time . . ." (Our italics.) 20 C. J. S., Corporations, sec. 1830, p. 49. See also 23 Am. Jur., Foreign Corporations, sec. 370, pp. 353-356.

Again referring to the case of Tri-state Amusement Co. v. Forest Park Highlands Amusement Co., supra, the performance of the contract for the providing of entertainment, apparently the very purpose for which the foreign corporation plaintiff was organized, necessitated a continuity of activity in its ordinary business for (four years) a considerable period of time. In the case of State ex rel. Hays v. Robertson, supra, this court in its opinion quashing the judgment in the case of Mergenthaler Linotype Co. v. Hays, supra, stressed the fact that the Linotype Company, an unlicensed foreign corporation, had rented its machines (the renting of machines was "part and parcel of its usual and ordinary business") in this state for a considerable period of time, six years. The ruling of the Springfield Court of Appeals (181 S. W. 1183 and 182 Mo. App. 113) in holding that the Linotype Company was not doing or transacting business within the meaning of the state was, therefore, in conflict with the ruling of this court in United Shoe Machinery Co. v. Ramlose, supra, wherein the Shoe Machinery Company, an unlicensed foreign corporation organized for the purpose (among others) of leasing its machinery and had leased its equipment in this state for a considerable period of time, seventeen years, was held to be doing or transacting business within the meaning of the statute.

In the case at bar, nothing in the stipulation of facts is indicatory that the plaintiff corporation had the purpose to continue to engage within this state in the "buying" of property or in the transaction of any of the other ordinary business for which it was incorporated. It is agreed that plaintiff sent its agents who took lodging at a hotel at Marshfield for several weeks; but these agents, it is stipulated, were engaged in "collecting . . . and compromising" the obligations purchased. The transaction, the buying, was not of the nature which necessitated a continuity of activity for a considerable period of time. It was stipulated that the note "herein sued upon, along with many others . . . was struck off and sold to the plaintiff" at a sale or public auction held on the 29th day of October, 1940—we infer that the "buying" was done within the course of that one day. We rule that the buying of the notes and judgments was not a doing or a transacting of business within the meaning of the statute.

Since the purchase of the notes and judgments (under the facts as herein stipulated) is held to have been lawful, we should not deny to plaintiff the right to proceed to collect upon the obligations. The compromise and collection of debts and the engaging in litigation do not constitute a doing or a transaction of business within the meaning of the statutes. Heinrich Chemical Co. v. Welch (Mo. App.),

718

300 S. W. 1001; Meddis v. Kenney, supra; Missouri Coal and Mining Co. v. Ladd, supra; 20 C. J. S., Corporations, secs. 1835 and 1836, pp. 51-52. See also North American [886] Mortgage Company v. Hudson (Miss. Sup.), 168 So. 79.

The judgment should be reversed and remanded with directions to enter judgment for plaintiff.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.